Citation Nr: 1331557 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 07-34 637 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for an upper back disorder.

2. Entitlement to service connection for a low back disorder.

3. Entitlement to an initial rating in excess of 10 percent for peripheral neuropathy of the left lower extremity.

4. Entitlement to an initial rating in excess of 10 percent for peripheral neuropathy of the right lower extremity.

5. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The appellant


ATTORNEY FOR THE BOARD

Rebecca Feinberg, Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to June 1970.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from February 2006 and February 2008 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. In the February 2006 rating decision, the RO granted service connection for peripheral neuropathy of the lower extremities and assigned separate 10 percent evaluations effective from November 29, 2005. The February 2008 rating decision continued those evaluations and denied service connection for an upper and low back disorder and entitlement to TDIU.

In March 2009, the Veteran testified before a Veterans Law Judge via videoconference, who is no longer employed by the Board. When the Board offered him another hearing, the Veteran accepted. In July 2013, the Veteran testified before the undersigned at the RO. Transcripts of both hearings are associated with the claims file.

A review of the Veteran's virtual VA claims files show that they contain only evidence that is duplicative of that already in the paper claims file or irrelevant to the issues on appeal.

The Veteran's claims were previously before the Board and remanded in August 2009. As will be explained in further detail below, the remand directives were complied with, as they concern the matters decided herein, and the Board may proceed with this claim.

The issues of entitlement to service connection for an upper back disorder and a low back disorder are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The Veteran's peripheral neuropathy is productive of moderate paralysis of the sciatic nerve in both lower extremities.

2. The severity of the Veteran's peripheral neuropathy of both lower extremities has remained essentially consistent throughout the appeal period.

3. On July 15, 2013, prior to the promulgation of a decision in the appeal, the Board received notification from the appellant and representative that a withdrawal of the appeal as to entitlement to a TDIU is requested.


CONCLUSIONS OF LAW

1. The criteria for an initial rating of 20 percent for peripheral neuropathy of the left lower extremity are met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.14, 4.124a, Diagnostic Code 8699-8620 (2012).

2. The criteria for an initial rating of 20 percent for peripheral neuropathy of the right lower extremity are met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.14, 4.124a, Diagnostic Code 8699-8620 (2012).

3. The criteria for withdrawal of the appeal of entitlement to a TDIU, by the appellant (or his or her authorized representative) have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In addition, the notice requirements of the VCAA apply to all elements of a service connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

With regard to claims for increased disability ratings for service-connected conditions, the law requires VA to notify the claimant that, to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), vacated and remanded sub nom. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration. Finally, the notice must provide examples of the types of medical and lay evidence that the Veteran may submit (or ask the VA to obtain) that are relevant to establishing her or his entitlement to increased compensation. However, the notice required by section 5103(a) need not be specific to the particular Veteran's circumstances; that is, VA need not notify a Veteran of alternative diagnostic codes that may be considered or notify of any need for evidence demonstrating the effect that the worsening of the disability has on the particular Veteran's daily life. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The notice must be provided prior to an initial unfavorable decision by the agency of original jurisdiction (AOJ).

Nevertheless, the Veteran in this case is challenging the initial evaluations assigned following the grant of service connection for his peripheral neuropathy of both lower extremities. In Dingess, the Court held that, in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Id. at 490-91. See also VAOPGCPREC 8-2003 (December 22, 2003). Thus, because the notice that was provided before service connection was granted was legally sufficient, VA's duty to notify has been satisfied with respect to the issues on appeal.

In addition, the duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment records have been associated with the claims file. In addition, all identified and available post-service medical records have been obtained or submitted and associated with the file. The Veteran and his representative have not identified any outstanding records that are pertinent to the claims being decided herein.

The Veteran was afforded VA examinations in November 2005, September 2006, June 2008, August 2010, and July 2011. The Board finds that the VA examinations obtained in this case are adequate, as they are predicated on a review of the Veteran's medical history as well as on a physical examination and fully address the rating criteria that are relevant to rating the disability in this case. 

There is also no objective evidence indicating that there has been a material change in the severity of the Veteran's service-connected disabilities since he was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. 

Thus, there is adequate medical evidence of record to make a determination in this case. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c)(4).

The Veteran's claim was remanded in August 2009. In compliance with the remand, the Veteran's VA treatment records were obtained and associated with the claims file. In addition, the Veteran was afforded a VA examination regarding his peripheral neuropathy that complied with all of the remand directives regarding an adequate examination. As such, the Board finds that, to the extent that the Veteran's appeal is decided herein, the remand directives were complied with and no further development is necessary. Stegall v. West, 11 Vet. App. 268 (1998).

Moreover, as previously noted, the Veteran was also afforded an opportunity to present testimony at two hearings before the Board. In Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010), the Court held that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with 38 C.F.R. § 3.103(c)(2). These duties consist of (1) fully explaining the issues pertinent to the claim(s) on appeal; and (2) suggesting the submission of evidence that may have been overlooked. See also 38 C.F.R. § 3.103(c)(2). In this case, the undersigned Veterans Law Judge and the Veterans Law Judge that conducted the March 2009 hearing set forth the issues to be discussed and sought to identify pertinent evidence not currently associated with the claims folder. The hearings focused on the elements necessary to substantiate the claims and the Veteran, through his testimony and questioning by his representative, demonstrated his actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that VA complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010).

The Board concludes the Veteran was provided the opportunity to meaningfully participate in the adjudication of his claims and did in fact participate. Washington v. Nicolson, 21 Vet. App. 191 (2007). For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal.


II. Initial Rating Claims

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7.

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of the veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). 

Where a veteran appeals the initial rating assigned for a disability when a claim for service connection for that disability has been granted, evidence contemporaneous with the claim for service connection and with the rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an [initial] rating on appeal was erroneous . . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence obtained during the appeal period indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.; see also Hart v. Mansfield, 21 Vet. App. 505 (2007) (VA's determination of the "present level" of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period the increased rating claim has been pending). 

In this case, the Veteran is currently assigned separate 10 percent evaluations for his peripheral neuropathy in each lower extremity pursuant to 38 C.F.R. § 4.124(a), Diagnostic Code 8699-8620. Under the criteria associated with that diagnostic code, a 10 percent evaluation is contemplated for mild incomplete paralysis, and a 20 percent evaluation is assigned for moderate incomplete paralysis. A 40 percent evaluation is warranted for severe incomplete paralysis, and a 60 percent evaluation is contemplated for severe incomplete paralysis with marked muscular atrophy. An 80 percent evaluation is warranted for complete paralysis, where the foot dangles and drops, there is no active movement possible of the muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. See 38 C.F.R. § 4.124a, Diagnostic Code 8620 (2012).

The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See Note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a).

Neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scar, with a maximum equal to moderate incomplete paralysis. 38 C.F.R. § 4.124.

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is entitled to a higher initial evaluation for his peripheral neuropathy of both lower extremities. 

In November 2005, the Veteran underwent a VA examination during which he complained that his left leg felt numb. He had intermittent claudication after walking 50 yards on level ground at medium pace. There was calf pain at rest, and the Veteran felt persistent coldness of the extremities. His motor function was within normal limits, but sensory function was abnormal with findings of decreased vibrating sense in the feet bilaterally. The right and left lower extremity reflexes revealed knee jerk 2+ and ankle jerk 2+. The diagnosis was peripheral neuropathy, and the neurological condition resulted in neuralgia.

In September 2006, the Veteran underwent another VA examination at which time he described tingling, numbness, abnormal sensation, constant pain, anesthesia, and weakness of the affected parts. There was pain that travelled from the toes to the neck. The symptoms were constant, but there was no functional impairment resulting from this condition. On examination, there was L4-S1 involvement revealing findings of neuralgia. There was sensory dysfunction with findings of numbness and tingling sensation to both feet and occasional burning. Motor function was within normal limits, but sensory function was abnormal with findings of decreased pinprick sensation to the left foot at S1 distribution. The right and left lower extremity reflexes revealed knee jerk 2+ and ankle jerk 2+. The diagnosis was bilateral lower extremity peripheral neuropathy. The subjective factors were a history of abnormal sensations of the bilateral lower extremities, and the objective factors were evidence of diminished sensation to pinprick and light touch of the left foot in an S1 distribution pattern.

In June 2008, the Veteran underwent an additional VA examination during which he complained of peripheral neuropathy above the knee in the left leg and no peripheral neuropathy in the right leg. He had cramps in the calves on the left only, which came during the day. At times, he felt like there were ants crawling up the left leg. The Veteran stated that he was currently unemployed after he was laid off from his shipping and receiving job because they were concerned about falls on stairs. The symptoms of peripheral neuropathy did not seem to be interfering with the patient's occupational activity or his activities of daily living, and there were no flare-ups of the disabilities. The examiner detected no muscle wasting or atrophy as a direct effect of nerve damage. The diagnosis was peripheral nerve damage in the lower extremities.

In March 2009, the Veteran testified before the Board that he was let go from his last job due to falling down. However, he indicated that he was currently a temporary employee. He complained of numbness, loss of strength, and tightness in his legs.

In August 2010, the Veteran underwent a VA examination at which time he denied having balance, coordination, and mobility problems. He had the bilateral lower extremities in stocking distribution, and he complained of weakness, numbness, paresthesias, dysesthesias, and pain. The pain was a burning and tingling type. Reflex examination was normal, but a sensory examination showed that, on both sides, vibration, pain or pinprick, and light touch were decreased. Position sense was normal, and there were no dysthesias. There was bilateral symmetric decreased sensation in a stocking distribution that was consistent with peripheral neuropathy. There was no evidence of loss of sensation in a dermatomal or radicular pattern in either of the lower extremities. A motor examination was normal with normal muscle tone and no atrophy, gait abnormality, imbalance, tremor, or evidence of fasciculations. The Veteran later noted that he was looking for work. The diagnosis was bilateral lower extremity neuropathy. There was nerve dysfunction and neuralgia, but paralysis was absent. The effect on occupational activities consisted of pain. The disability did not affect daily activities.

In July 2011, the Veteran underwent another VA examination during which he described progressive loss of strength in his legs. He had leg cramping and pain after walking 100 yards on level ground at two miles per hour. It was relieved at rest. There was calf pain at rest, and he felt persistent coldness in the extremities. He complained of tingling and numbness in the left leg and foot and neuralgia in the left leg and foot, but he denied loss of sensation. The Veteran's usual occupation was a material handler, which he has performed for ten years. He was currently employed in the same job. An examination of the lower extremities revealed no ulcer, stasis pigmentation, edema, or eczema. There was no persistent coldness, changes in color, ischemic limb pain at rest, gangrene, a deep ischemic ulcer, a superficial ulcer, atrophic skin changes, edema, dermatitis, cellulitis, or an AV fistula. There was also no functional limit of standing or walking with regard to the feet, and peripheral pulses in each extremity were normal. A neurological examination of the lower extremities revealed that motor function was within normal limits. Right and left sensory function for the legs and feet nerves was decreased based on the modality of the pinprick and touch, but his reflexes were normal. The peripheral nerve examination revealed neuralgia, and there was sensory dysfunction demonstrated by loss of sensation. There was no motor dysfunction. The diagnoses were left and right lower extremity peripheral neuropathy. The subjective factors were numbness, and the objective factors were sensory loss. The effect on his usual occupation was that there was no prolonged walking, climbing, or standing. The effect on his daily activity was light activity. He also had poor exercise tolerance.

In June 2011, the Veteran underwent some neurological testing as a part of a VA examination for the spine. A reflex examination was normal. On sensory examination, vibration, pain or pinprick, and light touch were decreased, but position sense was normal, and there were no dysesthesias. There was bilateral decreased sensation in a stocking distribution, but there was no evidence of loss of sensation in a dermatomal or radicular pattern in either of the bilateral lower extremities. A motor examination was normal with normal muscle tone and no atrophy. The effect on the Veteran's usual occupation was light duty, and the effect on his daily activity was moderate housework. The diagnosis was bilateral moderate lower extremity neuropathy.

In July 2013, the Veteran testified before the undersigned that he had the sensation of stiffness in both of his lower extremities. He also had tingling in his toes and calves. He was currently working, but did not know how long he had until he had to stop. He had symptoms with walking, standing, or sitting. He also complained of numbness in his left foot and burning in the tips of his toes. There was also weakness in his legs, and he regularly felt like they were going to go out on him. He missed work now and then because of his legs.

The Board finds that, based upon the evidence of record, an increase to a 20 percent disability rating for peripheral neuropathy of each lower extremity is warranted under Diagnostic Code 8620 because moderate incomplete paralysis of each lower extremity has been demonstrated. The Veteran has largely complained of the same symptoms throughout his appeal with the exception of one examination in which he denied the presence of much symptomatology in his right leg. Those symptoms consisted of tingling, pain, numbness, and weakness of the lower extremities. Additionally, the June 2011 VA examiner described the Veteran's bilateral lower extremity peripheral neuropathy as "moderate" in the examination report. This is the only examination report that contains such a specific opinion regarding the severity of the Veteran's disabilities. Therefore, the Board finds that a 20 percent rating for each lower extremity is warranted throughout the appeal period.

However, the Board finds that disability ratings in excess of 20 percent are not warranted. Throughout the appeal period, the Veteran ambulated without the use of assistive devices, and motor and reflex examinations were entirely normal throughout the appeal period on all examinations. It was also shown that the Veteran could perform moderate housework and performed adequately at his job, even though he had trouble with prolonged standing, sitting, or walking. 

The only abnormalities during the examinations were shown on sensory testing. As stated above, the rating code indicates that, when the involvement is wholly sensory, the rating should be for the mild, or at most, moderate degree. The rating commensurate with a moderate degree of incomplete paralysis of the sciatic nerve has been assigned herein, and no higher rating is warranted.

Moreover, there is no evidence of muscle atrophy, the foot dangling and dropping, no active movement possible of the muscles below the knee, or flexion of the knee weakened or lost. Strength testing was 5/5 during all examinations. The symptomatology described by the Veteran coincides with a moderate disability and does not suggest a rating in excess of 20 percent. Therefore, there is no evidence of record suggesting that a rating in excess of 20 percent for either lower extremity is warranted.

The assignment of a particular diagnostic code depends on the facts of a particular case. See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the current diagnosis, and demonstrated symptomatology. Any change in diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). In this case, the Board has considered whether another rating code would more appropriately assess the Veteran's disabilities or afford a higher rating. See Tedeschi v. Brown, 7 Vet. App. 411, 414 (1995). 

Because muscle atrophy and limitation of motion of the knees and ankles is not shown, none of the individual rating codes for these injuries could afford the Veteran a rating higher than 20 percent. See 38 C.F.R. §§ 4.71a, Diagnostic Codes 5256-5274, 5276-5284; 4.73, Diagnostic Codes 5310-5312. Although separate ratings could be assigned for each manifestation of the left and right leg disabilities, there is no evidence of muscle atrophy or limitation of motion. Thus, the combined rating would not be higher than the 20 percent rating now assigned for each lower extremity.

In reaching this decision, the potential application of various provisions of Title 38 Code of Federal Regulations have been considered, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In particular, the Board has considered the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the Board finds that the record does not show that the Veteran's disabilities are so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2012).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected disabilities are inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned ratings with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology, which include pain, numbness, tingling, decreased sensation, and difficulty walking. As such, it cannot be said that the available schedular evaluations for the disabilities are inadequate.

Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected peripheral neuropathy of the lower extremities under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995); Thun v. Peake, 22 Vet. App. 111 (2008).


III. TDIU

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2002). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2012). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, the appellant and his representative indicated at the July 2013 that they were withdrawing the appeal of the issue of entitlement to TDIU. Hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal of this issue, and it is dismissed.


ORDER

An initial 20 percent rating for peripheral neuropathy of the left lower extremity is granted, subject to the laws and regulations governing the payment of VA benefits.

An initial 20 percent rating for peripheral neuropathy of the right lower extremity is granted, subject to the laws and regulations governing the payment of VA benefits.

The appeal as to entitlement to TDIU is dismissed.


REMAND

With regard to the claims remaining on appeal, the Veteran was afforded VA examinations that contained opinions regarding the cervical and lumbar spine in September 2010 and June 2011. The opinions were provided by the same examiner. In each case, the examiner based his negative opinion, at least in part, on the absence of any findings that the Veteran was seen for or complained of lumbar or cervical spine symptoms during service. However, a review of the Veteran's service treatment records indicates that, when he was examined for separation in April 1970, the Veteran reported a history of "back trouble of any kind." He had previously denied a history of recurrent back pain at entry in January 1968. While examination of the spine was normal in April 1970, the report of medical history indicated that the Veteran did complain of pain in the back part of his thorax nearly all of the time. Therefore, the opinions provided by the examiner in September 2010 and June 2011 are inadequate because they do not consider or discuss this particular service record and contain a rationale that presumes there is no evidence of back pain during service. The Board finds that both issues must be remanded for an additional medical opinion that addresses this record because it is unclear whether pain in the back of the thorax would be related to either the cervical or lumbar spine, or both.

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the examiner that conducted the September 2010 and June 2011 examinations and request a clarifying medical opinion regarding the Veteran's claims for service connection for an upper back disorder and a low back disorder. Specifically, the opinion should consider and discuss the April 1970 report of medical history in which the Veteran reported back trouble and complained of near constant pain in the back of his thorax during service.

If that examiner is not available, another similarly qualified examiner should be asked to provide the opinions. If any examiner determines that examination of the Veteran is necessary prior to rendering an opinion, such should be arranged.

The examiner should state whether it is it at least as likely as not that any currently diagnosed cervical and/or lumbar spine disorder is related to the Veteran's service. In rendering this opinion, the examiner should consider the Veteran's report at separation of experiencing near-constant pain in the back of his thorax. 

It should be noted that the Veteran is competent to attest to observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of that conclusion as against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board.

2. Review the claims file and ensure that all of the foregoing development actions have been conducted and completed in full. If any development is incomplete, appropriate corrective action should be implemented. If any report does not include adequate responses to the specific opinions requested, it should be returned to the examiner for corrective action. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

3. Thereafter, the RO/AMC should consider all of the evidence of record and readjudicate the issues remaining on appeal. If the benefits sought are not granted, issue a Supplemental Statement of the Case, and allow the Veteran and his representative an opportunity to respond.

Thereafter, if indicated, the case should be returned to the Board for the purpose of appellate disposition.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).




______________________________________________
JESSICA J. WILLS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs