Citation Nr: 1528206 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 10-33 473 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for diabetes mellitus, type II.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse


ATTORNEY FOR THE BOARD

K. K. Buckley, Counsel


INTRODUCTION

The Veteran served on active duty from August 1976 to October 1998.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In January 2012, the Veteran presented sworn testimony during a personal hearing in Waco, Texas, which was chaired by the undersigned. A transcript of the hearing has been associated with the Veteran's VA claims file.

In an April 2014 Board decision, the claim was remanded for further evidentiary development. As will be described below, a review of the record reflects substantial compliance with the Board's Remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). The VA Appeals Management Center (AMC) continued the previous denial in a January 2015 supplemental statement of the case (SSOC). The Veteran's VA claims file has been returned to the Board for further appellate proceedings.


FINDING OF FACT

Diabetes mellitus, type II, was not manifested in service or until years later and is not otherwise attributable to the Veteran's active service.


CONCLUSION OF LAW

Diabetes mellitus, type II, was not incurred in or aggravated by the Veteran's active military service. 38 U.S.C.A. §§ 1110, 1116(f), 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2014), 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014), requires VA to assist a claimant at the time that he or she files a claim for benefits. As part of this assistance, VA is required to notify claimants of what they must do to substantiate their claims. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that the claimant is to provide; and (3) that VA will attempt to obtain. See Beverly v. Nicholson, 19 Vet. App. 394, 403 (2005). In addition, the notice requirements of the VCAA apply to all five elements of a service connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

By a letter dated in February 2009, the Veteran was notified of the evidence not of record that was necessary to substantiate his claim. He was told what information that he needed to provide, and what information and evidence that VA would attempt to obtain. He was also provided with the requisite notice with respect to the Dingess requirements. Under these circumstances, the Board finds that the notification requirements of the VCAA have been satisfied.

Next, the VCAA requires that VA make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The evidence in the claims file includes VA and private treatment records, and service treatment records (STRs). The Board recognizes that the Veteran's STRs dated 1976 to 1992 are missing and the Veteran has been notified of this issue and has addressed the missing records in written statements contained in the claims file. See, e.g., the rating decision dated February 1999 & the Board hearing transcript dated January 2012.

The Board observes that the Veteran has not contended that he was actually diagnosed with diabetes mellitus during his military service. See, e.g., the January 2012 Board hearing transcript, pg. 3. Rather, he argues that he manifest symptoms such as elevated glucose levels, which showed an in-service incurrence of diabetes mellitus, type II. Id. at pgs. 3-5. Accordingly, the Board notes that the loss of some of the Veteran's service records, although regrettable, is not crucial to the outcome of this case. The claims file contains multiple glucose readings that are documented in the Veteran's available STRs. The record also includes the Veteran's April 1998 retirement examination and report of medical history.

Pursuant to the April 2014 Board remand, the Veteran was afforded a VA examination in October 2014 and a VA medical opinion in December 2014 in order to address the pending claim. The examination report contains sufficient evidence by which to decide the claim. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and sound reasoning for the conclusion). The Board therefore concludes that the October 2014 VA examination report and December 2014 VA medical opinion are adequate for evaluation purposes. See 38 C.F.R. § 4.2 (2014); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

Thus, given the standard of the regulation, the Board finds that VA did not have a duty to assist that was unmet.

II. Analysis

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. § 1110.

In order to establish direct service connection for the claimed disorder, generally, there must be competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Lay evidence can be competent and sufficient to establish the elements of service connection when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau, 492 F.3d at 1377.

Certain chronic diseases, including diabetes mellitus, may be presumed to have been incurred or aggravated during service if they become disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014). With 'chronic disease' shown as such in service (or within the presumptive period under § 3.307), so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of a 'chronic disease' in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. If not manifest during service, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and the 'chronic disease' became manifest to a degree of 10 percent within 1 year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 C.F.R. § 3.307. The term 'chronic disease,' whether as manifest during service or manifest to a compensable degree within a presumptive window following service, applies only to those disabilities listed in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).
In this matter, the Veteran contends that he is diagnosed with diabetes mellitus, type II, which began during his active military service. He asserts that he had high sugar and cholesterol readings in service for which he was sent to dietary classes. See the January 2012 Board hearing transcript at pg. 3. He also argues that, shortly after his 1998 retirement, he was placed on medication for diabetes. Id. at 3.

As noted above, the Veteran served on active duty from August 1976 to October 1998. As has been explained above, some of the Veteran's STRs are missing. The Court has held that in cases where records once in the hands of the government are lost, the Board has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of- the-doubt rule. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). The Board's analysis of the Veteran's claim has been undertaken with this heightened duty in mind.

The case law does not, however, lower the legal standard for proving a claim for service connection, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the appellant. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (the Court declined to apply an "adverse presumption" where records have been lost or destroyed while in Government control which would have required VA to disprove a claimant's allegation of injury or disease in service in these particular cases).

Available service treatment records (STRs) show that, when examined in May 1993, the Veteran's cholesterol was 261, that was considered high. Laboratory tests performed in March and May 1994 reveal that his cholesterol was 296 and 301, respectively. Results of laboratory tests performed in July 1994 at Darnall Army Community Hospital at Fort Hood, Texas (Darnall ACH), reflect the Veteran's increased glucose (114) and cholesterol (292) levels. When examined for retirement in April 1998, his cholesterol was 312 and his HDL was 9.8. Hyperlipidemia was noted. It was also indicated that the Veteran was being tried on Mevacor and would be re-evaluated in two months. Notably, however, the Veteran's April 1998 retirement examination did not document an ongoing diagnosis of diabetes or elevated glucose.

The post-service medical evidence includes records of the Veteran's treatment at Darnall ACH, with a September 2001 record showing a history of diabetes mellitus. A VA treatment record dated in June 2006 indicated a diagnosis of hyperglycemia and reported, "[h]e has gained weight again and is heading for diabetes mellitus." VA treatment records dated in July 2006 noted that the Veteran was diagnosed as a pre-diabetic and was started on Glucophage three weeks prior. Similarly, an October 2006 VA treatment stated that the Veteran was "recently put on Glucophage as his fasting blood sugars crept into a range where they could be official[ly] diagnosed as diabetes mellitus." A January 2007 private treatment record noted the Veteran's statement that he was put on Glucophage temporarily secondary to his sugars starting to run high as a new way to prevent diabetes mellitus; he only had to take it for two months. A November 12, 2007 private treatment record from W.S.M., III, D.O., indicated that the Veteran had a past medical history of non-insulin dependent diabetes mellitus.

In his December 2008 claim, the Veteran reported that he was diagnosed with diabetes mellitus, type II, on December 4, 2008; however, he stated, "I have been taking Glucophage for multiple years."

The Veteran was afforded a VA examination in May 2010, at which time, a VA physician reviewed the Veteran's medical records and said the Veteran was prescribed metformin due to a diagnosis of "pre" diabetes and to decrease insulin levels. The physician opined that there was no laboratory criteria for a diagnosis of diabetes mellitus found. However, subsequent VA outpatient records, dated to September 2011, described the Veteran as having diabetes. See, e.g., February 2, 2011 Primary Care record noting assessment of diabetes that was well-controlled on metformin. Similarly, according to a January 23, 2012 VA medical record, the Veteran was advised that he was diabetic and metformin was taken to treat the disease. The record indicates that diabetes was listed in his medical record.

Therefore, pursuant to the April 2014 Board remand, the Veteran was afforded another VA examination in October 2014. The October 2014 VA examiner reviewed the Veteran's medical history and concluded, "[t]he condition claimed was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event, or illness." The examiner explained that the Veteran did not have diabetes while in the service. He stated, "[t]here is no evidence that he had fasting glucose of over 126. He did not have any HbA1Cs while in service. His urines do not show any glucose." The examiner continued, "[h]owever, he was at risk for developing diabetes because of his family history and possible impaired fasting glucose (IFG) in 1994, assuming that these glucose measurements were fasting." [The examiner then referenced glucose levels taken in May 1993, March 1994, May 1994, July 1994, and April 1998.] He continued, "[h]owever, these elevated [glucose levels] also had liver function tests (LFT) on the lab slip. In 1993-1994, the Veteran was being followed for elevated LF . . . His periodic and retirement physical showed no signs of IFG." The examiner further explained, "[t]aking the other view that the 1994 glucoses were fasting, Veteran may have had IFG and controlled his FBS on diet, (he was sent to dietician for his elevated cholesterol), which resulted in normal glucose at retirement." However, the examiner noted the October 2006 primary care record which indicated that the Veteran did not have a firm diagnosis of diabetes, although a June 2006 note indicated that the Veteran "has gained weight and is heading for diabetes mellitus." The examiner stated that the Veteran met VA criteria for diabetes mellitus in September 2010 based upon his HbA1C laboratory results.

The Veteran was also afforded a VA addendum opinion in December 2014, at which time the VA examiner again reviewed the claims file and confirmed his conclusion set forth in the October 2014 VA examination report that, "[t]he condition claimed was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event, or illness)." The examiner explained that the Veteran developed diabetes after December 2007. The examiner reported that the Veteran met the VA criteria for diabetes in September 2010. The examiner continued, "[h]owever, the examiner does not see evidence that this had its onset in service or is the result of a disease or injury in service. The current evidence does not point to this." He explained, "[d]uring his service, there were no definite symptoms, signs, [or] diagnoses of diabetes. After getting out, the Veteran was at increased risk for developing diabetes because of his metabolic condition in 2006 and weight gain." The examiner noted, "[i]n 1998, the Veteran was 219 pounds, and developed diabetes when he was 250-260 pounds. So, the examiner believes these factors contributed to his developing diabetes, not to mention his family history of diabetes."

When assessing the probative value of a medical opinion, the access to claims files and the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). The Court has held that claims file review, as it pertains to obtaining an overview of a claimant's medical history, is not a requirement for private medical opinions. A medical opinion that contains only data and conclusions is not entitled to any weight. Further a review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion, which is where most of the probative value of a medical opinion comes from. "It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

In this matter, the medical evidence of record shows that the currently diagnosed diabetes mellitus did not manifest during the Veteran's military service. In the October 2014 and December 2014 reports, the VA examiner reviewed the Veteran's medical history, and concluded that the Veteran's diabetes mellitus, type II, did not initially manifest during the Veteran's military service. Accordingly, the Board finds the October 2014 and December 2014 VA medical opinions are probative as to the question of etiology, as they appear to have been based upon a thorough review of the record and provided detailed rationale based upon the Veteran's entire history. See Bloom v. West, 12 Vet. App. 185, 187 (1999) (the probative value of a physician's statement is dependent, in part, upon the extent to which it reflects "clinical data or other rationale to support his opinion"). Crucially, the VA examiner concluded that the Veteran's currently diagnosed diabetes mellitus, type II, did not manifest in service and was, in fact, unrelated to the Veteran's military service. His conclusions were rendered based upon review of the entire claims file and discussion of the clinical record. In addition, the rationale set forth in the October 2014 and December 2014 medical opinions was substantial, thorough, and based on the overall record.

Moreover, the Veteran has not produced a medical opinion to contradict the conclusions of the VA examiner set forth in the October 2014 examination report and the December 2014 medical opinion. As was explained previously herein, the Veteran has been afforded ample opportunity to present competent medical evidence in support of his claim. He has not done so. See 38 U.S.C.A. § 5107(a) (West 2014) (it is the claimant's responsibility to support a claim for VA benefits).

Based on a review of the evidence, the Board finds that service connection for diabetes mellitus, type II, is not warranted. In reaching this determination, the Board has also considered the lay assertions of record, including the Veteran's contentions in support of medical nexus. As a lay person, the Veteran is competent to report observable symptoms. See Washington v. Nicholson, 21 Vet. App. 191, 195 (2007) (holding that, "[a]s a layperson, an appellant is competent to provide information regarding visible, or otherwise observable symptoms of disability); see also Barr, supra; Layno v. Brown, 6 Vet. App. 465 (1994). However, the Veteran is not competent to provide medical conclusions as to whether a disability is due to his military service. See Buchanan v. Nicholson, 451 F.3d 1331-37 (Fed. Cir. 2006); see also Miller v. Derwinski, 3 Vet. App. 201, 204 (1992). Therefore, to the extent that the Veteran is now claiming that his diabetes mellitus, type II, is the result of his military service, laypersons without medical training, such as the Veteran, is not competent to comment on medical matters. See 38 C.F.R. § 3.159(a)(1) (2014).

The Veteran is essentially contending that his diabetes mellitus, type II, manifested during his military service and continued thereafter. To this end, the Board finds that the Veteran is competent to report having certain observable symptoms such as frequent urination since service. Competent testimony is limited to that which the witness has actually observed, and is within the realm of his personal knowledge; such knowledge comes to a witness through use of his senses, that which is heard, felt, seen, smelled or tasted. Layno, supra. Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the later is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker, supra; Layno at 469; see also Cartwright, supra.

Crucially, there is no indication in the medical evidence of record that the Veteran was diagnosed with diabetes mellitus, type II, during his military service or for several years thereafter. The Board has considered that lay evidence concerning continuity of symptoms after service, if credible, is ultimately competent, regardless of the lack of contemporaneous medical evidence. Buchanan, supra. Additionally, the Board recognizes that as with 'chronic disease' shown as such in service (or within the presumptive period under § 3.307), so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). Crucially, as indicated by the October 2014 and December 2014 VA medical opinions, the evidence does not document a diagnosis of diabetes mellitus condition until years after the Veteran's October 1998 active duty discharge. C.f., Walker, 708 F.3d at 1331. The Board further observes that the Veteran's contentions of chronic diabetes mellitus symptomatology dating from service are contradicted by the findings of the VA examiner, who specifically considered the Veteran's lay assertions and any such inferences contained in the record in rendering the negative nexus opinions.

The Board is charged with weighing the positive and negative evidence; resolving reasonable doubt in the Veteran's favor when the evidence is in equipoise. Considering the overall evidence, including the post-service medical evidence, the uncontradicted October 2014 and December 2014 VA medical opinions, and the lay evidence presented by the Veteran, the Board finds that the negative evidence is more persuasive and of greater probative value.

In conclusion, the preponderance of the evidence is against the contentions that the Veteran's current diabetes mellitus, type II, is related to active military service. Thus, the benefit-of-the-doubt rule is not helpful to the Veteran. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Entitlement to service connection for diabetes mellitus, type II, is denied.



____________________________________________
THOMAS H. O'SHAY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs