# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0773

Dennis L. Washington, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued May 26, 2005                    Decided    May 4, 2007  )

*Louis J. George* and *Stephanie Forester*, both of Washington, D.C., for the appellant.

*David L. Quinn*; *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and MOORMAN, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court.  HAGEL, *Judge*, filed a concurring opinion.

MOORMAN, *Judge*:  The appellant, Dennis L. Washington, through counsel, seeks review of a December 19, 2002, decision of the Board of Veterans' Appeals (Board) that denied his claims for VA service connection for a bilateral foot disorder and a skin disorder.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  On July 21, 2006, in the interest of judicial economy, the Court stayed proceedings in this case pending the disposition of *Overton v. Nicholson*, 20 Vet.App. 427 (2006).  For the reasons set forth below, the Court will now lift the stay, vacate the Board's December 2002 decision, and remand the matters for readjudication consistent with this decision.

## I. FACTS

Mr. Washington served on active duty in the U.S. Army from February 1959 to January 1961. Record (R.) at 15. His service medical records indicate that he was treated during service for pityriasis rosea, which is a skin disease of unknown etiology, marked by the presence of salmon- or fawn-colored herald plaque, often seen on the trunk, arms, or thighs and followed by the development of lesions that tend to peel and produce a scaly rim. R. at 27, 31, 35, 38, 43; *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1297 (28th ed. 1994). In addition, his January 1961 separation exam indicated that he had "foot trouble." R. at 62-65. In May 1999, Mr. Washington filed claims for service connection for trouble with both feet and for a skin condition, and he noted that he had experienced those conditions "since service." R. at 69. In January 2000, a VA regional office (RO) denied his claims because they were not well grounded. R. at 115-17. Mr. Washington did not appeal the RO's decision.

In May 2001, Mr. Washington again claimed service connection for bilateral foot and skin conditions. R. at 119. In June 2001, the RO sent to him a letter advising him of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, and its application to his claims. R. at 146. Mr. Washington did not respond to that letter. *See* R. at 1-188.

In September 2001, the RO again denied Mr. Washington's claims because it found there was "no evidence that the conditions were incurred in service." R. at 153. In November 2001, Mr. Washington appealed to the Board, asserting that his service medical records should reflect the in-service treatment that he received for both conditions. R. at 160. In December 2002, the Board issued the decision here on appeal. The Board found that the evidence did not show that Mr. Washington had either a current foot or skin disability, or that any such disability was incurred in or aggravated by service. R. at 2-3.

## II. ARGUMENTS ON APPEAL

Mr. Washington argues on appeal that VA failed to satisfy the requirements of 38 U.S.C. § 5103(a) because the notice that he received was inaccurate. Appellant's Brief (App. Br.) at 8. Specifically, he asserts that although the RO had informed him to submit medical evidence showing a current diagnosis and the severity of his feet and skin disabilities, it erred by not also informing him

that he could provide to VA *either* medical evidence showing a current diagnosis of his disabilities *or* lay evidence showing persistent or recurrent symptoms of his disabilities. App. Br. at 8-9. Mr. Washington contends that he was prejudiced by such deficient notice. He asserts that had he been informed that if he had submitted sufficient lay evidence of persistent or recurrent symptoms of disability, VA may have provided him a medical examination that would have allowed him to demonstrate further persistent and recurrent pain and swelling in his toes and the continuous presence, since his military service, of a rash on his face. Appellant's Supplemental Brief (App. Suppl. Br.) at 4-6.

The Secretary argues that the RO's June 2001 letter provided Mr. Washington with VCAA-compliant notice. Secretary's Br. at 9. Alternatively, the Secretary argues that if the Court finds notice error, it should find that any such error did not prejudice Mr. Washington. Specifically, the Secretary maintains that even if Mr. Washington submitted evidence of persistent or recurrent symptoms of his disabilities, there is no assurance either that VA would be obligated to provide him a medical examination or that the outcome of any such medical examination would support Mr. Washington's claims. Secretary's Suppl. Br. at 7-8.

### III. ANALYSIS

#### A. Applicable Law and Regulation

The VCAA requires that upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction, the Secretary must inform the appellant of the information and evidence not of record that (1) is necessary to substantiate the claim, (2) the Secretary will seek to obtain, if any, and (3) the appellant is expected to provide, if any. *See* 38 U.S.C. § 5103(a); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002). In addition, the Secretary must also request that the claimant provide any evidence in his possession that pertains to the claim. *See Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004); 38 C.F.R. § 3.159(b) (2006). A Board decision on whether there is section 5103(a) notice compliance is "a substantially factual determination." *Mayfield v. Nicholson*, 444 F.3d 1328, 1335 (Fed. Cir. 2006); *see Overton*, 20 Vet.App. at 432.

3

B. Application of the Law to the Facts

In its December 2002 decision, the Board found that the appellant "was clearly notified of the evidence necessary to substantiate his claims of entitlement to service connection" by the June 2001 notice letter, the September 2001 RO decision, and a February 2002 Statement of the Case. R. at 5-6. As the U.S. Court of Appeals for the Federal Circuit held in *Mayfield*, "[t]he Board's decision was based on an incorrect understanding of the law, specifically that [section 5103(a)] permitted compliance through a combination of unrelated pre- and post-decisional communications." 444 F.3d at 1335. Because the Board's decision is based on an incorrect understanding of the law, and because the Court cannot find that the Board made any factual findings with regard to individual documents that the Board relied upon for its determination that "the notification requirement[s] of the VCAA ha[ve] been satisfied," the Court is unable to determine precisely whether the Board would have considered the June 2001 notice letter, alone, sufficient for VCAA notice compliance. R. at 6; *see Overton*, 20 Vet.App. at 434; *cf. Prickett v. Nicholson*, 20 Vet.App. 370, 375-76 (2006) (finding, on the facts of that case, that the Board "rendered a factual determination" that the notice letter of record, alone, satisfied VA's section 5103(a) notice requirements). The Court will not make, in the first instance, the essentially factual determination as to whether the June 2001 letter, standing alone, was sufficient to provide the appellant with VCAA-compliant notice. *See Mayfield*, 444. F.3d at 1335.

Having found Board error in its analysis of VCAA notice compliance, the Court will next address whether the Board's error prejudiced the appellant in the processing of his claim. *See* 38 U.S.C. § 7261(b); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004); *Overton*, 20 Vet.App. at 439-40. The appellant's assertion of error in this case might be characterized as a first-element section 5103(a) notice error because it implicates the evidence that can be used to show a current disability or a nexus to service. The appellant, however, argues that VA failed to comply with the second and third section 5103(a) notice requirements to notify him of which portion of the information and evidence necessary to substantiate his claim he was responsible for providing and which portion VA would obtain on his behalf. App. Suppl. Br. at 1; *see Quartuccio*, 16 Vet.App. at 187. "Prejudice can only arise from these kind of errors if an appellant demonstrates that he or she failed to submit evidence as a result of not being advised to do so, or that the Secretary failed to

4

seek to obtain evidence that he should have obtained." *Overton*, 20 Vet.App. at 436-37. Accordingly, in order to find that prejudice resulted from such errors, "these errors must be pled with specificity with regard to both the error and how the appellant was prejudiced." *Id*. at 437. Regardless of whether the appellant's assertions are of a first-element notice error, or second- and third-element notice errors, the Court, as discussed below, concludes that the appellant has pled with specificity how he was prejudiced by VA's asserted notice error.

The appellant alleges that VA erred by failing to inform him that he could submit lay evidence of persistent or recurrent symptoms of disability that, together with the other evidence of record, indicated that his symptoms of disability may be associated with his military service. App. Suppl. Br. at 1-3. In his original application for compensation, the appellant described the nature of his disability as merely "both feet" and a "skin condition." R. at 69. He asserts, however, that he failed to submit the following lay evidence as a result of VA's failure to provide him VCAA-compliant notice: (1) He observes that his toes "are severely bent . . . beginning and ever since military service" and he experiences "persistent and recurrent pain and swelling in these severely bent toes;" and (2) he has had "an ashy white rash on his forehead, nose, and cheekbones . . . continuously . . . since it first developed during active service." App. Suppl. Br. at 5-6. As a layperson, the appellant is competent to provide information regarding visible, or otherwise observable, symptoms of disability such as those he described in his supplemental pleading. *See Duenas v. Principi*, 18 Vet.App. 512, 520 (2004); *Layno v. Brown*, 6 Vet.App. 465, 470 (1994) (lay evidence is "competent to prove that a claimant exhibited certain features or symptoms of an injury or illness during service"); *Doran v. Brown*, 6 Vet.App. 283, 288 (1994) ("[Lay] witnesses are perfectly competent to testify as to their firsthand observations of appellant's visible symptoms.").

The Court's review of whether the appellant had a meaningful opportunity to participate is not based on whether the appellant actually had evidence to submit, but whether he had the opportunity to submit such evidence. Thus, the appellant need not have actually submitted such lay evidence to support his pleading of prejudice because the Court cannot consider new evidence in the first instance. *See Bonhomme v. Nicholson*, 21 Vet.App. 40, 45 (2007). Rather, the appellant is required to explain how he was denied a meaningful opportunity to participate in the adjudication of his claim. *See Overton*, 20 Vet.App. at 436-37. He has done so. The appellant's description

of the evidence that he would have submitted if VA had notified him that he could submit lay evidence of persistent or recurrent symptoms of disability amounts to an argument that he was denied the opportunity to participate meaningfully in the adjudication of his claim because he was not aware that he could submit such evidence. The Court cannot speculate whether the appellant actually would have submitted such evidence if provided the opportunity; however, the Court concludes that the appellant has presented a plausible showing that any VA error with respect to the section 5103(a) notice requirements prevented him from meaningfully participating in the adjudication of his claim because, as a result of such error, he did not have the opportunity to submit lay evidence of persistent and recurrent symptoms of his claimed disabilities. *See id*. Submission of credible evidence of such symptoms could have led to VA providing him a medical examination under the low threshold established by 38 U.S.C. § 5103A. *See* 38 U.S.C. § 5103A(d)(2)(B); *McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006) (holding that the requirement that VA will treat a medical examination as necessary when the lay or medical evidence before the Secretary indicates that the appellant's disability, or symptoms of disability, may be related to his military service "requires only that the evidence 'indicates' that there 'may' be a nexus between the two. This is a low threshold."). Upon review of the record as a whole and the parties' pleadings, the Court cannot hold that the appellant was not prejudiced by the Board's error. *See Conway*, 353 F.3d at 1375.

Accordingly, the Court will vacate the Board's December 2002 decision and remand the matters. On remand, the appellant is free to submit additional evidence and to raise his arguments to the Board, and the Board is required to consider them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide "expeditious treatment" of remanded claims).

## IV. CONCLUSION

Based on the foregoing analysis, the appellant's and the Secretary's briefs, and a review of the record on appeal, the Court's July 21, 2006, stay is lifted. The Board's December 19, 2002, decision is VACATED and the matters are REMANDED for readjudication consistent with this opinion.

6

HAGEL, *Judge*, concurring: I concur in the majority's ultimate conclusion and in much of its reasoning.[1] Specifically, I agree with the majority that, in concluding that Mr. Washington did not receive compliant notice, the Board relied impermissibly on a combination of unrelated pre- and post-decisional communications. *See ante* at 4. However, as explained below, I write separately because I see a fundamental error in the June 2001 notice letter itself– an error that illustrates the significant relationship between the duty to notify and the duty to assist, and one that I believe should be addressed by the Agency on remand.

The Veterans Claims Assistance Act of 2000 was enacted to further an important purpose–that VA have before it all information necessary to making a determination on a claim as early in the decision-making process as possible. One section of that Act–now 38 U.S.C. § 5103A(d)–was devoted to clarifying VA's duty to assist veterans seeking disability compensation in obtaining medical examinations. That section provides a list of criteria for determining when VA must provide a claimant with a medical examination or opinion before deciding the claim(s) at issue. Those criteria are no mystery–they are set forth explicitly in section 5103A(d): A medical examination or opinion is necessary if the record before the Secretary (1) "contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability," and (2) "indicates that the disability or symptoms may be associated with the claimant's active . . . service," but (3) "does not contain sufficient medical evidence for the Secretary to make a decision on the claim." If those criteria are met, the claimant has **the right** to receive a VA medical examination or opinion.

Because of the immense importance of medical evidence in the VA claims process, whether or not a claimant receives a VA medical examination or opinion can bear significantly upon the outcome of the claim for VA benefits. Indeed, in this case, Mr. Washington requires medical evidence in order to establish service connection for his bilateral foot and skin disorders. *See* 38 U.S.C. § 1110; *Duenas v. Principi*, 18 Vet.App. 512, 519 (2004) (citing *Caluza v. Brown*, 7 Vet.App. 498, 505 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table)); 38 C.F.R. § 3.303 (2006).

---

[1] I would not have relied on *Overton*, but would instead have applied *Pelegrini* in analyzing the effect of the error. My position on that issue was made known in my dissent from the order denying full-Court consideration in *Overton. See Overton v. Nicholson*, 20 Vet.App. 494, 495-500 (2006) (Hagel, J., dissenting).

The duty to notify and the duty to assist are not independent of one another–the opposite is true. The duty to notify is, in many ways, the key to unlocking the door that leads the way to fulfillment of the duty to assist. Put differently, the duty to notify invites claimant participation in the information and evidence gathering process, which is a cooperative one between the Agency and the claimant. It is therefore no accident that the notice provisions of section 5103(a) and the assistance provisions of section 5103A, some of which entitle a claimant to assistance in the form of a VA medical opinion or examination, were enacted into law together under a section entitled "Assistance to Claimants" as part of the Veterans Claims Assistance Act of 2000. *See* Pub. L. No. 106-475, § 3(a), 114 Stat. 2096-97. The statutory link between the duty to notify and the duty to assist is also made clear in section 5103(a) itself, which imposes upon the Secretary a duty to notify a claimant of which portion of the information and evidence necessary to substantiate the claim"is to be provided by the claimant and which portion, if any, the Secretary, ***in accordance with section 5103A of this title*** . . . , will attempt to obtain on behalf of the claimant." (emphasis added).

The duty to notify compels the Secretary to apprise claimants like Mr. Washington not only that medical evidence is required to substantiate the claim, but also whether VA will assume responsibility for obtaining such evidence by providing a medical examination or opinion or whether the claimant is ultimately responsible for obtaining that evidence on his own. *See* 38 U.S.C. § 5103(a). If discharged properly, the duty to notify ensures, among other things, that a claimant will know who shoulders the burden of procuring crucial medical evidence. Of course, in the early stages of the claims process, there may be a limited amount of information and evidence of record, perhaps so limited that VA could not yet know whether it is obligated to provide a VA medical examination or opinion. In such a situation, it is my view that the duty to notify should ensure that a claimant knows that he has the right to a VA medical examination or opinion if the record contains evidence that meets the "low threshold" established by the statute and regulation. *McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006). Notice of this type ensures that the claimant has a fair opportunity to obtain what is often the most crucial evidence necessary to prevail on the claim. Properly discharged, the duty to notify gives real substance to the duty to assist.

Here, in its June 2001 letter, VA indicated in various portions of the same letter that it would provide a medical examination or opinion "[i]f necessary," "if appropriate," and "if we decide it's

necessary to make a decision on your claim." Record at 146. Those statements are misleading. They lulled Mr. Washington into not participating in evidentiary development because those statements did not clearly apprise him that he was responsible for doing so, or worse yet, conveyed the false impression that VA was responsible for procuring this evidence. Indeed, as the majority recognizes, Mr. Washington now asserts that he would have provided lay evidence as to the symptoms of his conditions had he known that such evidence could have led to a VA medical examination which, in turn, could have led to a favorable decision on his claims. *See ante* at 5-6.

Even more troubling, the June 2001 letter misrepresents the law concerning VA's duty to assist because it can be read to indicate that the decision to provide a VA medical examination or opinion rests entirely within VA's discretion even though the statute and regulation ***entitle*** a claimant to a VA examination as a matter of right if the criteria listed in the statute and regulation are met. Although those criteria are clearly defined in 38 U.S.C. § 5103A(d) and its implementing regulation, 38 C.F.R. § 3.159(c)(4), they were not identified or explained anywhere in the June 2001 notice letter, nor was there even a reference to the statute or regulation. As a result, Mr. Washington was not notified of how to obtain VA's assistance in obtaining a VA medical examination or opinion. This, in my view, represents a critical break in the link between the duty to notify and the duty to assist. The June 2001 letter hindered Mr. Washington's ability to participate in the processing of his claims. Because the purpose of notice is to enable, not hinder, a claimant's participation in the gathering of evidence pertinent to his claim, the notice was therefore noncompliant.

Here, the majority finds error on the basis that the Board relied impermissibly on a combination of unrelated pre- and post-decisional communications. *See ante* at 4. It then considers Mr. Washington's participation in the adjudication process in the context of a prejudicial-error analysis. After determining that it cannot find the Board's error to be nonprejudicial, the majority then vacates the Board decision and remands the matters. *Ante* at 6. Although the majority never reaches the substance of the June 2001 letter, in my view, for the reasons provided in this separate statement, the June 2001 letter does not satisfy the Secretary's duty to notify.

9