Citation Nr: 1710357 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 10-17 241 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a urological disorder. 

2. Entitlement to service connection for a bilateral ankle disability. 

3. Entitlement to service connection for a bilateral knee disability, to include as secondary to a bilateral ankle disability. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

M. Timbers, Associate Counsel


INTRODUCTION

The Veteran served as a member of the United States Marine Corps, with active service from June 1978 through June 1982. 

This appeal comes to the Board of Veterans' Appeals ("Board") from a June 2009 rating decision by the Department of Veterans Affairs ("VA") Regional Office ("RO") in Waco, Texas (hereinafter Agency of Original Jurisdiction ("AOJ")).

The Veteran testified at an October 2014 Travel Board Hearing, held before the undersigned Veterans Law Judge. A transcript of this hearing has been reviewed and associated with the Veteran's claims file.

The Veteran's appeal has previously been before the Board. In a February 2015 decision, the Board denied the Veteran's claim for entitlement to service connection for a bilateral knee and bilateral ankle disabilities. Thereafter, the Veteran appealed this denial to the Court of Appeals for Veteran's Claims ("CAVC/Court"). In an April 2016 Joint Motion for Partial Remand ("JMPR"), the Court vacated the Board's February 2015 denial of entitlement to service connection for the Veteran's bilateral ankle and bilateral knee disabilities. Specifically, the parties to the April 2016 JMPR found the Board had not satisfied its duty to assist, as the record before the Board in February 2015 did not contain the Veteran's most recent VA treatment records. As such, the Board remanded these issues back to the AOJ in a July 2016 order, and directed that these VA treatment records, and any additional private medical records, be obtained and associated with the Veteran's claims file. These records have been obtained and associated with the Veteran's claims file. Unfortunately, as will be discussed in greater detail below, the Board finds that an additional remand for the issues of entitlement to service connection for bilateral ankle and bilateral knee disabilities is necessary. 
As to the Veteran's claim for entitlement to service connection for a urological disorder, this issue was remanded in the prior February 2015 Board decision. Specifically, the AOJ was directed to obtain a medical opinion as to whether it was at least as likely as not that the Veteran's current urological disorder was etiologically related to his military service. A genitourinary examination was conducted in April 2015, and the examination report and medical opinion have been associated with the Veteran's claims file. Therefore, the Board finds that both the February 2015 and July 2016 Board remand directives have been substantially complied with, and the Veteran's appeal have been properly returned to the Board. See Stegall v. West, 11 Vet. App. 268 (1998).

This appeal was processed using Virtual VA and the Veterans Benefits Management System ("VBMS"). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The issues of entitlement to service connection for a bilateral ankle and bilateral knee disability are addressed in the REMAND portion of the decision below and is REMANDED to the AOJ. The VA will notify the Veteran if further action is required.


FINDING OF FACT

The Veteran's current urological disorder did not manifest in service and is not related to his military service. 


CONCLUSION OF LAW

The criteria for service connection of a urological disorder have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA Duties to Notify and Assist:

As provided for by the Veterans Claims Assistance Act of 2000 ("VCAA"), the VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016). The VCAA required notice provisions were accomplished by numerous letters, including those dated in January 2009 and April 2009, which informed the Veteran of the information and evidence not of record that is necessary to substantiate the claim, the information and evidence that the VA will seek to provide, and the information and evidence the Veteran is expected to provide. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). The letters also informed the Veteran how disability ratings and effective dates are established. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). 

Pertinent to the VA's duty to assist, the record also reflects that the VA has undertaken appropriate actions to obtain all relevant evidence material to this claim. The AOJ has secured the Veteran's service treatment records ("STRs"), VA treatment records, and all identified and available private treatment records. For his part, the Veteran has submitted personal statements, and arguments from his representative.

The Veteran was additionally afforded a VA examination in April 2015, in connection with the claim addressed herein. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); see also 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4). The Board finds this VA examination and the opinion provided are thorough, supported by a clear rationale, based on a review of the claims folder, and supported by the clinical evidence of record. Additionally, the VA examiner considered the Veteran's lay assertions in reaching their conclusion. Therefore, the Board finds that this medical opinion is adequate to decide the claim on appeal.

As was noted above, the Veteran's claims were previously remanded by the Board, in February 2015 and most recently in July 2016. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. See Stegall v. West, 11 Vet. App. 268 (1998). Following the February 2015 Remand, the Veteran was scheduled for a VA examination for his urological disability. This examination report, and medical opinion, was associated with the Veteran's claims file. 

In response to the Board's July 2016 remand, the AOJ obtained updated treatment records from the VA North Texas Health Care System (which includes the Dallas VA Medical Center ("VAMC") and Ft. Worth Outpatient Clinic). Additionally, the AOJ attempted to obtain the Veteran's private medical records from physician C.B., M.D., however these records were destroyed. A formal finding of unavailability was entered into the Veteran's claims file. See August 2016 Report of Contact. The Veteran was notified that these records were destroyed in a letter dated September 2016. For his part, the Veteran has not identified or provided any updated private treatment records since the Board's July 2016 remand. As such, the Board finds the AOJ has substantially complied with the remand directives. 

Therefore, the Board concludes the Veteran was provided the opportunity to meaningfully participate in the adjudication of his claim and did in fact participate. Washington v. Nicolson, 21 Vet. App. 191 (2007). Moreover, for the service connection issue on appeal, neither the Veteran, nor his representative, has advanced any procedural arguments in relation to VA's duties to notify and assist. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015) (holding that "absent extraordinary circumstances . . . we think it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran . . ."). For these reasons, the Board concludes that the VA has fulfilled its duty to assist the Veteran in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal.

Lastly, the Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

General Rules and Regulations Governing Entitlement to Service Connection:

In the instant appeal, the Veteran seeks entitlement to service connection for a urological disorder. At various points throughout the period on appeal, the Veteran has described his urological disorder to include symptoms of kidney stones, chronic urinary tract infections ("UTIs"), and urethral numbness. See May 2015 Statement in Support of Claim and October 2014 Testimony. In this regard, the Board has considered the Court's holding that when determining the scope of a claim, the Board must consider the claimant's description if the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of that claim. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). In other words, the Board has considered all of the Veteran's reported symptoms and limitations in considering the scope of his claim for service connection.

In seeking VA disability compensation, a Veteran generally seeks to establish that a current disability results from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110. "Service connection" basically means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303.

Establishing service connection generally requires competent evidence showing: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381, F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Additionally, VA regulations allow for a current disability to be service connected if the evidence of record reveals the Veteran has a current diagnosis that was chronic in service, or, if not chronic, that was seen in service with continuity of symptomatology demonstrated thereafter. 38 C.F.R. § 3.303(b); Savage v. Gober, 10 Vet. App. 488, 494-97 (1997). A demonstration of continuity of symptomatology is an alternative method of demonstrating the second and/or third elements discussed above. Savage, 10 Vet. App. at 495-496. 

The determination of whether the requirements of service connection have been met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). In making these determinations, the Board must consider and assess the credibility and weight of all evidence in the claim file, including the medical and lay evidence, to determine its probative value. In doing so, the Board must provide its reasoning for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Barr v. Nicholson, 21 Vet. App. 303 (2007).

When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3. A claimant need only demonstrate an approximate balance of positive and negative evidence in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). For a claim to be denied on the merits, a preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

In the instant appeal, the Board finds that the Veteran has a current diagnosis for nephrolithiasis (i.e. kidney stones). See April 2015 VA Examination and North Texas Health Care System ("HCS") Treatment Records. As such, the Veteran has satisfied the first element of service connection, the existence of a current disability. Additionally, the Board observes the Veteran was treated for symptoms of UTI and dysuria during his military service. See STRs dated February 1979 and May 1981. Therefore, the focus of the Board's discussion will be on whether there is a nexus between the Veteran's in-service treatment for UTIs and his current symptoms of kidney stones and urethral numbness. 

The Veteran states that he has experienced chronic symptoms since his military service, and has continued to experience chronic kidney stones throughout the date of his appeal. See May 2015 Statement in Support of Claim. He states he experiences daily symptoms, which require continuous management through VA health care facilities. However, based upon a review of the probative medical and lay evidence, the Board finds the evidence is against a finding of a nexus between the Veteran's current symptoms and his in-service treatment for UTIs.

First, the Board finds both the medical and lay evidence of record do not support a finding of chronicity of symptomatology since the Veteran's separation from military service. A review of the Veteran's post-service medical records uniformly establishes that the Veteran has subjectively stated his current symptoms did not begin until 2008. See North Texas HCS Records and Parkland Health and Hospital Systems. For example, the first onset of the Veteran's kidney stones occurred in March 2008, when the Veteran sought treatment from the emergency services department of Parkland Hospital. The Veteran was treated with antibiotics and discharged. During a follow-up examination, the Veteran denied any prior history or prior episodes of kidney stones. See August 2008 North Texas HCS Urology Consultation. As such, both the medical and lay evidence indicate the Veteran's first episode of kidney stones did not occur until more than 20 years prior to his separation from military service. 

The discharge instructions following the Veteran's March 2008 treatment for kidney stones contained an informational description of causes and treatment for kidney stones. Notably, this information sheet stated kidney stones "usually result when there are high levels of calcium or uric acid in the urine; they may also result from repeated urinary infections." The Board observes that this is a general informational handout regarding kidney stones, and does not suggest that the Veteran's specific condition is the result of repeated UTIs. 

Rather, metabolic testing following the Veteran's March 2008 kidney stones suggest the Veteran's symptoms are the result of insufficient fluid intake. For example, a March 2009 work-up reported the Veteran had low urine volume and supersaturation of calcium oxalate, uric acid, and other suspended solids. See North Texas HCS Urology Consult. Similarly, an April 2010 work-up concluded the Veteran's kidney stones are the result of decreased fluid intake and increased salt in his diet. As such, the Veteran was advised to increase his daily intake of fluids to 2-3 liters. However, a review of the Veteran's subsequent treatment records suggests he did not heed this advice, and as a result, continued to complain of chronic symptoms. Specifically, during a March 2011 consultation, the Veteran reported he has only been taking in 1-2 cups of fluid per day. The Veteran was later encouraged to increase his fluid intake to 5-6 liters per day, due to excessive sweating. See August 2014 North Texas HCH Nephrology Consultation. 

As for the Veteran's reported symptoms of urethral numbness, the Board does not find any medical evidence which establishes a link to his in-service history of UTIs. Rather, the Veteran's complaints of numbness with urination were presumed to have a neuropathic etiology. See February 2010 North Texas HCS Nephrology Consultation.

Additional diagnostic testing included radiographs of the Veteran's kidneys and abdomen. A review of these reports indicates the Veteran has been continually diagnosed with "stable" and "non-obstructing" kidney stones. See July 2008 Radiology Note, March 2009 computerized tomography ("CT") scan, and September 2009 ultrasound report. Notably, each report has stated there have been no changes in the shape or size of these calcifications since the initial July 2008 x-ray. 

More recently, the Veteran was seen for a nephrology consultation in June 2015. See North Texas HCS Treatment Records. During this appointment, it was noted the Veteran had not sought treatment for his urological disorder since April 2014, and that the Veteran denied any recurring kidney stones since that time. As for his urethral numbness, the Veteran stated he is able to control and initiate his own urinary voids. He did not describe any symptoms of persistent numbness. During a follow-up consultation in May 2016, the Veteran reported no recurrent kidney stones in the past five years. Once again, the Veteran denied any recurring symptoms of dysuria or numbness.

Therefore, the Board finds the Veteran's post-service medical records do not support a finding of chronic symptoms since the Veteran's separation from military service. Furthermore, the Board finds the clinical evidence of record suggests the Veteran's diet is the primary cause of his recurrent kidney stones, and not any prior history of UTIs. 

Second, as to evidence of a medical nexus between the Veteran's in-service UTIs and current diagnosis for recurrent kidney stones, the Board finds the opinion of the April 2015 VA examiner to be probative and entitled to significant weight. Following an examination of the Veteran's STRs and post-service medical records, the examiner concluded that the Veteran's current kidney stones are less likely than not related to his military service. In support of this conclusion, the VA examiner noted that while the Veteran was treated for complaints of dysuria and UTIs in service, there was no mention of kidney stones. Additionally, based upon a review of the Veteran's post-service urinalysis reports, the VA examiner concluded there was no support for any continued UTIs. As such, there is no medical nexus between the Veteran's treatment for UTIs in service, and his initial manifestation of kidney stones in March 2008. 

Furthermore, the April 2015 VA examiner highlighted the Veteran's August 2004 nephrology consultation to support his conclusion of a negative nexus. The examiner noted the recommendation following this August 2014 examination was for the Veteran to increase his fluid intake and moderate the salt intake from his diet. At no point was the Veteran's history of in-service UTIs identified as a potential contributing factor to the Veteran's recurrent kidney stones, either during the August 2014 nephrology consultation, or in the Veteran's past metabolic workups. Therefore, the April 2015 VA examiner concluded there was no probative medical evidence which suggested a link between the Veteran's current kidney stones and his in-service treatment for UTIs and/or dysuria. 

The Board finds the conclusions and reasoning of the April 2015 VA examiner is thorough and supported by a complete review of the medical, and lay evidence of record. Notably, the examiner highlighted the Veteran's lay reports of symptoms, in addition to his longitudinal medical history. As such, the Board finds that this opinion is well supported and entitled to significant probative weight. 

Therefore, the Board has reviewed the medical evidence of record, but finds no probative evidence which establishes a causal link between the Veteran's military service and his current treatment for recurrent kidney stones. Accordingly, the Board finds that the preponderance of the evidence is against the Veteran's claim for service connection of a urological disorder, on either a direct basis or through chronicity of symptoms. As the evidence is against the Veteran's claim, there is no reasonable doubt to resolve in his favor. Therefore, the Veteran's claim for service connection must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Entitlement to service connection for a urological disorder is denied. 


REMAND

The Board recognizes that the Veteran's claim has been previously been remanded; however, while the Board sincerely regrets the additional delay, the Veteran's claim must again be remanded in order to ensure that the VA has adequately assisted the Veteran in the development of his claim.

As discussed above, following the April 2016 JMPR, the Veteran's claims for service connection of a bilateral knee and bilateral ankle disabilities were remanded to the AOJ so that additional medical records could be obtained and associated with the Veteran's claims file. Upon review of these additional medical records, the Board finds an additional remand is required, as the file is missing the interpretation reports from a June 2015 magnetic resonance imaging ("MRI") of the Veteran's left and right ankles. Specifically, the Veteran's medical records from North Texas HCS state these MRIs were performed at an outside facility, and that in order to view the findings, access to an internal database is required (i.e. Vista and CPRS). Following a thorough review of the both the Veteran's Virtual VA and the Veterans Benefits Management System files, the Board cannot find the June 2015 MRI interpretation report or the findings of this examination. As such, an additional remand is required to obtain these files. 

As the Veteran has claimed entitlement to service connection for a bilateral knee disability, to include as secondary to his bilateral ankle disability, the Board finds that these issues are inextricably intertwined. See Harris v. Derwinski, 1 Vet. App. 180 (1991) (holding two issues are "inextricably intertwined" when they are so closely tied together that a final decision on one issue cannot be rendered until a decision on the other issue has been rendered). The Board may not properly review the Veteran's claim for secondary service connection for a bilateral knee disability until the requested development for the issue of service connection for a bilateral ankle disability has been completed. Therefore, the issue of service connection for a bilateral knee disability, to include as secondary to a bilateral ankle disability, must also be remanded. 

Furthermore, in light of the recent VA treatment records from North Texas HCS, the Board finds a medical opinion should be obtained. Specifically, a review of the Veteran's radiology reports dated January 2014 reports evidence of a "remote prior injury" to the Veteran's left and right ankles. See Radiology Report of January 22, 2014. Therefore, the Board finds that a VA medical examination is necessary to determine whether these findings suggest an etiological relationship between the Veteran's reports of ankle pain during service and his current symptoms. 

The Board greatly regrets the additional delay in resolving the Veteran's claims for entitlement to service connection. Unfortunately, as discussed above an additional remand is required.
Accordingly, the case is REMANDED for the following action:

1. First, AOJ should obtain the interpretation report and findings from the June 9, 2015 MRI of the Veteran's left and right ankles, and then associate these findings with the Veteran's claims files. 

In addition to the June 2015 MRI report, the AOJ should obtain any updated/recent VA treatment records which may have been generated since the date of the Veteran's last remand, dated July 2016, that are not already on file, and associate them with the claims file. 

2. After any additional records are associated with the claims file, the AOJ should secure the appropriate VA joints examination, for the purpose of obtaining a medical opinion as to the etiology of the Veteran's bilateral knee and bilateral ankle disability. 

In scheduling this examination, the examiner should be provided with access to the entire claims file, including this Remand, and the examiner must affirmatively report that they have reviewed the claims file in its entirety.

All necessary diagnostic testing and evaluation should be performed, and all findings set forth in detail. Based upon a review of the entirety of the claims file, the history presented by the Veteran, and the examination results, the examiner is requested to provide an opinion as to the following questions:

(a) Is it at least as likely as not (i.e. a 50 percent probability or greater) that the Veteran's bilateral ankle disability had its onset during military service, or is otherwise related to his active duty service? 

(b) Is it at least as likely as not (i.e. a 50 percent probability or greater) that the Veteran's bilateral knee disability had its onset during military service, or is otherwise related to his active duty service?

(c) Is it at least as likely as not (i.e. a 50 percent probability or greater) that the Veteran's bilateral knee disability was caused or aggravated by any of the Veteran's service connected disabilities, including any bilateral ankle disability? 

Governing regulations provide that service connection is permissible on a secondary basis if a claimed disability is proximately due, the result of, or aggravated by a service-connected disability. See 38 C.F.R. § 3.310.

The term aggravation is defined as a chronic and permanent worsening of the underlying condition beyond its natural progression versus a temporary or intermittent flare-up of symptoms. If the examiner determines there has been aggravation, he or she should try and quantify the amount of additional disability the Veteran had, above and beyond that he had prior to the aggravation. 

In rendering the above opinions, the examiner must consider and specifically address the following evidence:

(a) STRs showing treatment for bilateral ankle and bilateral knee pain; specifically in October 1979 and November 1979;

(b) the March 2009 VA examination for the Veteran's bilateral ankle and bilateral knee disabilities; and

(c) the January 2014 MRI report of the Veteran's bilateral ankles, showing evidence suggestive of a remote prior injury. 

Explanations for all opinions must be provided. In providing the requested rationale, the examiner is asked to cite to the pertinent evidence of record, including clinical records and the Veteran's statements regarding the onset of his bilateral ankle and bilateral knee symptoms.

3. The AOJ should notify the Veteran that it is his responsibility to report for any scheduled VA examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655. In the event that the Veteran does not report for any scheduled VA examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable

4. After completing the above development, the AOJ should review the claims file and ensure that all of the foregoing development actions have been conducted and completed in full. See Stegall v. West, 11 Vet. App. 268, 271 (1998).
5. Thereafter, the AOJ should consider all of the evidence of record and readjudicate the claim for entitlement to service connection for a bilateral knee and bilateral ankle disability. If the benefit sought is not granted, the AOJ must then issue a Supplemental Statement of the Case ("SSOC") and allow the Veteran and his representative an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs