﻿Citation Nr: AXXXXXXXX
Decision Date: 12/27/18 Archive Date: 12/26/18

DOCKET NO. 180817-151
DATE: December 27, 2018
ORDER
Entitlement to an effective date earlier than January 9, 2017, for the grant of service connection for bilateral hearing loss is denied.
Entitlement to an effective date earlier than August 19, 2015, for the grant of service connection for tinnitus is denied.
Entitlement to an effective date earlier than January 24, 2017, for the grant of service connection for peripheral vestibular disorder is denied.
Entitlement to an initial rating in excess of 40 percent for hearing loss is denied.
Entitlement to an initial rating of 30 percent, but no higher, for peripheral vestibular disorder is granted.
Entitlement to service connection for an embolism is denied.
REFERRED
The issue of whether clear and unmistakable error (CUE) was committed in the August 2005 rating decision that initially denied entitlement to service connection for hearing loss has been reasonably raised by the record in an April 2017 Supplemental Legal Brief submitted by the Veteran’s attorney. The Board, however, may not consider a CUE challenge to a final RO decision in the first instance. Jarrell v. Nicholson, 20 Vet. App. 326 (2006). This matter is, therefore, referred to the agency of original jurisdiction (AOJ) for appropriate action.
FINDINGS OF FACT
1. Service treatment records noted to have been associated with the claims file in September 2015 were of record at the time of the August 2005 rating decision which denied service connection for hearing loss; and as such reconsideration of the Veteran’s 2005 claim for service connection for hearing loss pursuant to 38 C.F.R. § 3.156 (c) is not warranted.
2. VA received no communication that constituted a formal or informal claim to reopen his previously-denied claim for hearing loss after the August 2005 rating decision and prior to January 9, 2017.
3. VA received no communication that constituted a formal or informal claim for tinnitus prior to August 19, 2015.
4. VA received no communication that constituted a formal or informal claim for service connection for a peripheral vestibular disorder prior to January 24, 2017. 
5. The Veteran’s bilateral hearing loss has been manifested by no higher than Level VIII hearing acuity in the right ear and Level VII hearing acuity in the left ear.
6. The Veteran’s peripheral vestibular disorder has been manifested by daily episodes of dizziness, loss of balance, and inability to walk straight.
7. The preponderance of the evidence is against finding that the Veteran has, or has had at any time during the appeal, a current diagnosis of an embolism.
CONCLUSIONS OF LAW
1. The criteria for an effective date earlier than January 9, 2017, for the grant of service connection for bilateral hearing loss have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.
2. The criteria for an effective date earlier than August 19, 2015, for the grant of service connection for tinnitus have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.
3. The criteria for an effective date earlier than January 24, 2017, for the grant of service connection for peripheral vestibular disorder have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.
4. The criteria for an initial rating in excess of 40 percent, but no higher, for hearing loss have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.7, 4.85, 4.86, 4.87, Diagnostic Code 6100. 
5. Resolving reasonable doubt in the Veteran’s favor, the criteria for an initial rating of 30 percent, but no higher, for peripheral vestibular disorder have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1 4.7, 4.87, Diagnostic Code 6204.
6. The criteria for service connection for an embolism have not been met. 38 U.S.C. §§ 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active service from November 1978 to November 1982.
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.
The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).
Effective Dates
Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for an increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. If the claim for service connection is received within one year of a veteran’s discharge from service, the effective date of an award of service connection will be the day following discharge from service. 38 U.S.C. § 5110 (b)(1) (2012); 38 C.F.R. § 3.400 (b)(2). Otherwise, the effective date will be the later of the date of receipt of claim or the date entitlement arose. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (b)(2). 
A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5101 (a) (2012); 38 C.F.R. § 3.151 (a) (2017). The term “claim” or “application” means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p). 
For claims filed prior to March 24, 2015, any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui generis may be considered an informal claim. Such an informal claim must identify the benefits sought. See 38 C.F.R. § 3.155 (a) (2014). 
For claims filed on or after March 24, 2015, however, VA requires that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. See 79 Fed. Reg. 57660 (Sept. 25, 2014). 
The pertinent regulation allows a claimant to submit a VA Form 21-0966, Intent to File a Claim for Compensation and/or Pension, or Survivors Pension and/or DIC (“Intent to File” form), and VA may recognize the receipt date of the intent to file a claim as the date of claim so long as VA receives the successfully completed claim form within a year. 38 C.F.R. § 3.155 (b) (“Upon receipt of the intent to file a claim, VA will furnish the claimant with the appropriate application form prescribed by the Secretary. If VA receives a complete application form ... [for the] benefit sought within 1 year of receipt of the intent VA will consider the complete claim filed as of the date the intent to file a claim was received.”). An intent to file claim can be submitted in three ways: saved electronic application, written intent on prescribed intent to file a claim form, and oral intent communicated to designated VA personnel and recorded in writing. See 38 U.S.C. § 3.155(b)(1)(i), (ii), (iii). If not on a standardized Intent to File form, then any communication “is considered a request for an application form for benefits” and has no impact on effective dates, which is governed based upon when the formal claim is received. Id. at § 3.155(a). An Intent to File is “active” for the purpose of assigning an earlier effective date of entitlement until the earlier of the following – either VA receives a substantially complete application for benefits for the same type of benefit identified on the Intent to File, or the one-year period following VA’s receipt of the communication of the Intent to File ends.
Newly discovered service treatment records can serve as a basis for providing an earlier effective date under 38 C.F.R. § 3.156 (c). At any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. 38 C.F.R. § 3.156 (c)(1). An award made based on all or in part on the records identified by paragraph (c)(1) of this section is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim. 38 C.F.R. § 3.156 (c)(3). 
The Board notes initially that the AOJ has assigned effective dates for the grants of service connection for hearing loss, tinnitus, and peripheral vestibular disorder based on the dates that the claims were received by VA or by the dates of the Intent to File if the actual claim was received within a year of the Intent to File. As noted above, the effective date of an evaluation and award of compensation based on an original claim or a claim reopened after final disallowance will be the date of receipt of the claim or the date entitlement arose. Absent the receipt of relevant official service department records that existed and had been associated with the claims file when VA first decided the claim, even assuming for the sake of argument that entitlement arose prior to receipt of a claim, the earliest effective date for entitlement to service connection would be the date of claim. As such, the Board’s analysis will concentrate on determining the date of the Veteran’s claims. 
1. Entitlement to an effective date earlier than January 9, 2017, for the grant of service connection for bilateral hearing loss
The Veteran contends that he is entitled to an effective date of May 23, 2005, for the grant of service connection for bilateral hearing loss. The Veteran contends that in September 2015, VA associated with the claims file relevant official service department records, the Veteran’s service treatment records, that existed and had not been associated with the claims file when VA first decided the claim in August 2005. 
The Veteran originally filed a claim for service connection for hearing loss on May 23, 2005. Subsequently, an August 2005 rating decision denied the Veteran’s claim for service connection for hearing loss. The Veteran did not appeal, nor was new and material evidence received, within one year of notification of such decision. Thus, the May 2005 decision is final. 38 C.F.R. §§ 3.104, 19.118, 19.153.
An Intent to File was received by VA on January 9, 2017. Subsequently, the Veteran filed a claim to reopen his claim for service connection for hearing loss on January 12, 2017. The Veteran’s claim was reopened and granted effective the date of the Veteran’s Intent to File, January 9, 2017. This date is consistent with 38 C.F.R. § 3.400(q)(ii) and (r), which requires that the effective date is either the date of claim or the date entitlement arose, whichever is later. Here, the date of claim is appropriate, as it is the later of the two dates, where the evidence reflects that entitlement arose when the Veteran was diagnosed with and his disability was connected to service. To arrive at this conclusion, the Board has considered the submission of service treatment records associated with the record and the Veteran’s contentions, as to be discussed below.
Newly discovered service treatment records can serve as a basis for providing an earlier effective date under 38 C.F.R. § 3.156 (c). At any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim. 38 C.F.R. § 3.156 (c)(1). An award made based on all or in part on the records identified by paragraph (c)(1) of this section is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim. 38 C.F.R. § 3.156 (c)(3). 
The electronic claims file indicates that two envelopes of service treatment records were “received” on September 21, 2015. In this case, however, the Board finds that these service treatment records were associated with the claims file at the time of the August 2005 rating decision. The file contains a VA Request for Information which includes that a request complete medical/dental records (service medical records) was received by the service department in June 2005 and completed in July 2005. The requested records were noted to have been mailed. Importantly, the August 2005 rating decision specifically noted that the evidence included service medical records from November 13, 1978 through November 12, 1982. 
Thus, it is clear that the September 2015 “receipt date” is incorrect, and these records were associated with the paper claims file in August 2005 and utilized in the August 2005 rating decision. Accordingly, an earlier effective date is not warranted under 38 C.F.R. 3.156 (c).
In the alternative, to the extent that the Veteran contends that he is entitled to an effective date of August 9, 2015, for the grant of service connection for bilateral hearing loss, in accordance with Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). He specifically contends that his claim for service connection for tinnitus filed in October 2015 raised the issue of service connection for other symptoms or disabilities associated with tinnitus and the in-service diving accident, including bilateral hearing loss.
In this case, the evidence does not show that a claim, formal or informal, for service connection for hearing loss was received by VA after the August 2005 rating decision and prior to March 24, 2014, when the regulations changed that required a Veteran to file a claim on a standardized form. In fact, no documentation was received between August 2005 rating decision and August 2015. 
The next question for the Board is whether the claim received by the Veteran for service connection for tinnitus was also a claim for service connection for hearing loss.
The United States Court of Appeals for Veterans Claims (Court) has unambiguously stated that “tinnitus and hearing loss are recognized by the Secretary as separate and distinct disabilities.” Monzingo v. Shinseki, 26 Vet. App. 97, 104-05 (2012). 
The Veteran’s claim filed in October 2015 was specifically for tinnitus. Although hearing loss was shown on VA examination in December 2015, there is no evidence that the Veteran intended to file a claim for service connection for hearing loss at that time. See Ellington v. Nicholson, 22 Vet. App. 141 (2007) (finding that in the absence of a sufficient manifestation of an intent to apply for benefits for a particular disease or injury, a document providing medical information in and of itself is not an informal claim for VA benefits); Brannon v. West, 12 Vet. App. 32 (1998) (noting that the mere presence of medical evidence does not establish an intent to seek service connection for a disorder).
As the Veteran did not submit a claim for service connection for hearing loss on the prescribed form between March 24, 2015 and January 9, 2017, it follows logically that there was no intent to apply for service connection for hearing loss after the August 2005 rating decision and prior to January 9, 2017, and that a claim for entitlement to service connection for hearing loss prior to January 9, 2017, has not been reasonably raised. 
As such, the Board cannot conclude that the Veteran’s claim for service connection for tinnitus in October 2015 was also a claim to reopen his previously-denied claim for service connection for bilateral hearing loss. 
Consequently, the Board finds that the Veteran’s first request to reopen his claim for service connection for hearing loss after the August 2005 rating decision was received by VA on January 12, 2017, within one year of receipt of his Intent to File. 
To summarize, the Board finds that the service treatment records noted to have been associated with the claims file in September 2015 were of record at the time of the August 2005 rating decision which denied service connection for hearing loss; and as such reconsideration of the Veteran’s 2005 claim for service connection for hearing loss pursuant to 38 C.F.R. § 3.156 (c) is not warranted. 
In addition, the Board finds that a request to reopen his previously-denied claim for service connection for hearing loss was not reasonably raised after the May 2005 rating decision and prior to January 12, 2017. VA law clearly requires a claim as part of entitlement to service connection, and that such claim identify the benefit being sought. Here, the first correspondence that meets the definition of a claim to reopen a previously-denied claim for service connection for hearing loss after the May 2005 rating decision was received on January 12, 2017. 
There is no legal basis upon which to assign an earlier effective date for the grant of service connection under the facts of this case. See Flash v. Brown, 8 Vet. App. 332, 340 (1995) (“When a claim to reopen is successful and the benefit sought is awarded upon re-adjudication, the effective date is the date of the claim to reopen”).
Accordingly, the preponderance of the evidence is against an effective date earlier than January 9, 2017, for the grant of service connection for bilateral hearing loss, and the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107.
2. Entitlement to an effective date earlier than August 19, 2015, for the grant of service connection for tinnitus
The Veteran contends that he is entitled to an effective date earlier than August 19, 2015, for the award of entitlement to service connection for tinnitus. Specifically, he contends an effective date of May 23, 2005, is warranted for the grant of service connection for tinnitus; and he essentially argues that a claim for tinnitus was raised in May 2005 and remained unadjudicated until February 2016.
Historically, the Veteran filed a claim for service connection for tinnitus on October 13, 2015, within a year of his Intent to File received on August 19, 2015. The Veteran’s claim was subsequently granted effective the date of the Veteran’s Intent to File, August 19, 2015. Notably, the date of entitlement is the date that the Veteran’s tinnitus was connected to service, which is in December 2015. See Hearing Loss and Tinnitus Disability Benefits Questionnaire, December 7, 2015. Given that the date assigned is earlier, the Veteran is receiving a greater benefit being assigned an effective date as of the date of claim. See 38 C.F.R. § 3.400(b)(2), to be further explained.
The question for the Board is whether the claim received by the Veteran for service connection for hearing loss in May 2005 was also a claim for service connection for tinnitus.
As noted above, tinnitus and hearing loss are separate and distinct disabilities. Monzingo, 26 Vet. App. at 104-05. Although tinnitus was noted on a private medical examination in March 2005, there was no evidence of record at that time to suggest tinnitus was related to service, and there is no evidence that the Veteran intended to file a claim for service connection for tinnitus at that time. See Ellington, 22 Vet. App. at 141; Brannon, 12 Vet. App. at 32. As such, the Board cannot conclude that the Veteran’s claim for service connection for hearing loss in May 2005 reasonably raised a claim for service connection for tinnitus.
As noted above, no documentation was received between August 2005 rating decision and August 2015. As the Veteran did not submit a claim for service connection for tinnitus on the prescribed form between March 24, 2015 and August 18, 2015, it follows logically that there was no intent to apply for service connection for tinnitus prior to August 19, 2015, and that a claim for entitlement to service connection for tinnitus prior to August 19, 2015, has not been reasonably raised. 
Consequently, the Board finds that the Veteran’s initial claim for service connection for tinnitus was received by VA on October 13, 2015, within one year of receipt of his Intent to File. As such, the date of claim for service connection for tinnitus is August 19, 2015, the date of his Intent to File.
To summarize, the Board finds that a claim for service connection for tinnitus was not reasonably raised in 2005, or at any time prior to August 19, 2015. VA law clearly requires a claim as part of entitlement to service connection, and that such claim identify the benefit being sought. Here, the first correspondence that meets the definition of a claim for service connection for tinnitus was received on October 13, 2015. 
The legal authority governing effective dates is clear and specific; and the Board is bound by that authority. Under the circumstances in this case, the appropriate effective date for the grant of service connection for tinnitus is August 19, 2015, which is the date of claim, and provides the Veteran a greater benefit than the date entitlement arose. See 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400.
Accordingly, the preponderance of the evidence is against an effective date earlier than August 19, 2015, for the grant of service connection for tinnitus, and the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107.
3. Entitlement to an effective date earlier than January 24, 2017, for the grant of service connection for peripheral vestibular disorder
The Veteran contends that he is entitled to an effective date earlier than January 24, 2017, for the award of entitlement to service connection for peripheral vestibular disorder. Specifically, he contends an effective date of May 23, 2005, is warranted for his peripheral vestibular disorder; he essentially argues that a claim for a disability manifested by vertigo and dizziness was raised in May 2005 and remained unadjudicated until May 2017 when service connection for a peripheral vestibular disorder was granted.
Historically, on January 24, 2017, VA received the Veteran’s Supplemental Claim indicating that he would like to file a claim for vertigo. The Veteran’s claim was subsequently granted effective the date of the Veteran’s claim, January 24, 2017. 
The evidence does not show that a claim, formal or informal, for service connection for a vestibular disorder was received by VA prior to January 24, 2017. As noted above, the only claim filed in May 2005 was for service connection for hearing loss, and the only claim filed in October 2015 was for service connection for tinnitus. No documentation was received between August 2005 rating decision and August 2015. As the Veteran did not submit a claim for service connection for a vestibular disorder on the prescribed form between March 24, 2015 and January 23, 2017, it follows logically that there was no intent to apply for service connection for peripheral vestibular disorder prior to January 24, 2017, and that a claim for entitlement to service connection for a peripheral vestibular disorder prior to January 24, 2017, has not been reasonably raised. 
Consequently, the Board finds that the Veteran’s initial claim for service connection for a vestibular disorder was received by VA on January 24, 2017. 
To summarize, the Board finds that a claim for service connection for a peripheral vestibular disorder was not reasonably raised at any time prior to January 2017. VA law clearly requires a claim as part of entitlement to service connection, and that such claim identify the benefit being sought. Here, the first correspondence that meets the definition of a claim for service connection for a peripheral vestibular disorder was received in January 2017. 
The legal authority governing effective dates is clear and specific; and the Board is bound by that authority. Under the circumstances in this case, the appropriate effective date for the grant of service connection for a peripheral vestibular disorder is January 24, 2017. See 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400.
Accordingly, the preponderance of the evidence is against an effective date earlier than January 24, 2017, for the grant of service connection for a peripheral vestibular disorder, and the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107.
Increased Ratings
Disability ratings are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.
The Veteran is appealing the original assignments of a disability ratings following awards of service connection for hearing loss and peripheral vestibular disorder. As such, it is not the present level of disability which is of primary importance, but rather the entire period is to be considered to ensure that consideration is given to the possibility of staged ratings; that is, separate ratings for separate periods of time based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999).
4. Entitlement to an initial rating in excess of 40 percent for hearing loss from January 9, 2017 to April 30, 2018
The Veteran contends that he should be assigned a higher rating for his bilateral hearing loss. Specifically, he argues that the evidence shows entitlement to no less than a 50 percent ratimg on the basis of a December 7, 2015 Disability Benefits Questionnaire (DBQ). As noted above, January 9, 2017, the date the Veteran’s Intent to File was received, is the earliest possible effective date for service connection for hearing loss. 38 C.F.R. § 3.400 (q)(2). As such, the entire period (from January 9, 2017 (effective date of service connection for hearing loss) to April 30, 2018 (date VA received the Veteran’s RAMP Opt-in Election) is to be considered. The December 2015 DBQ, therefore, is outside of the appeal period, and cannot be considered to determine the severity of hearing loss during the appeal period. 
The AOJ has assigned a 40-percent rating pursuant to 38 C.F.R. § 4.86, Diagnostic Code 6100 for hearing impairment for the entire appeal period. 
Hearing loss ratings range from noncompensable to 100 percent based on organic impairment of hearing acuity, as measured by controlled speech discrimination tests in conjunction with average hearing thresholds determined by pure tone audiometric testing at frequencies of 1000, 2000, 3000 and 4000 cycles per second. “Pure tone threshold average” is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz divided by four. This average is used in all cases (including those in §4.86) to determine the Roman numeral designation for hearing impairment from Table VI or VIa. 38 C.F.R. § 4.85, Diagnostic Code 6100. The rating schedule establishes eleven auditory acuity levels, designated from Level I for essentially normal hearing acuity, through Level XI for profound deafness. 38 C.F.R. § 4.85. The horizontal rows in Table VI (in 38 C.F.R. § 4.85) represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. The vertical columns in Table VI represent nine categories of decibel loss based on the pure tone audiometry test. The Roman numeral designation is located at the point where the percentage of speech discrimination and pure tone threshold average intersect. See 38 C.F.R. §§ 4.85, 4.86. 
Section 4.85(a) requires that an examination for hearing loss be conducted by a state-licensed audiologist and must include both a controlled speech discrimination test (Maryland CNC test) and a pure tone audiometry test. Examinations must be conducted without the use of hearing aids. Section 4.85(c) indicates that Table VIA, “Numeric designation of Hearing Impairment Based Only on Pure Tone Threshold Average,” will be used when the examiner certifies that use of the speech discrimination test is not appropriate because of inconsistent speech discrimination scores.
When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, Table VI or Table VIa is to be used, whichever results in the higher numeral. 38 C.F.R. § 4.86 (a). Additionally, when the pure tone threshold is 30 decibels or less at 1,000 Hertz, and 70 decibels or more at 2000 Hertz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher numeral. 38 C.F.R. § 4.86 (b).
The Veteran underwent VA examination in May 2017 at which time he reported difficulty following conversations and responding accurately, difficulty hearing soft spoken women, and difficulty hearing in the presence of background noise. He perceived his right ear hearing to be worse than his left ear hearing. On the authorized audiological evaluation, pure tone thresholds, in decibels, were as follows: 
 HERTZ 
 500 1000 2000 3000 4000
RIGHT 40 65 75 70 85
LEFT 25 55 70 80 105

The average pure tone threshold for the right ear was 74 decibels and for the left ear was 78 decibels. Speech audiometry revealed speech recognition ability of 58 percent in the right ear and of 76 percent in the left ear. See May 2017, Hearing Loss and Tinnitus, Disability Benefits Questionnaire (DBQ).
Using Table VI in 38 C.F.R. § 4.85, the Veteran received numeric designations of VIII for the right ear and V for the left ear which equates to a 30 percent evaluation. 38 C.F.R. § 4.86, Table VII. 
Using Table VIa in 38 C.F.R. § 4.85, the Veteran received numeric designations of VI for the right ear and VII for the left ear which equates to a 30 percent evaluation. 38 C.F.R. § 4.86, Table VIIa. 
Using the higher numeric designation of VIII from Table VI for the Veteran’s right ear and the higher numeric designation of VII from Table VIa for the Veteran’s left ear, a 40 percent rating is warranted. 
A higher 50 percent rating is not available as the Veteran’s May 2017 audiological evaluation did not show numeric designation of X for either the right or left ear.
Accordingly, the preponderance of the evidence is against assigned a rating in excess of 40 percent for the Veteran’s bilateral hearing loss; and the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107.
The Veteran has raised the issue of entitlement to an extraschedular rating for his bilateral hearing loss in correspondence received with his Notice of Disagreement received in January 2017.
There are two elements that a claimant must demonstrate before referral for consideration of entitlement to an extraschedular disability rating is warranted: (1) An exceptional or unusual disability picture and (2) whether the disability picture exhibits "other related factors," such as marked interference with employment or frequent periods of hospitalization. Specifically, it was noted that since he reported impairment due to his hearing loss, a higher evaluation under extraschedular rating may also be warranted. 
The Court held in Doucette v. Shulkin, in the context of bilateral hearing loss and extraschedular consideration, that:
The [schedular] rating criteria for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment, as these are precisely the effects that VA's audiometric tests are designed to measure. Thus, when a claimant's hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria. However, as the rating criteria do not otherwise discuss, let alone account for, other functional effects, such as dizziness, vertigo, ear pain, etc., the Court cannot conclude that the rating schedule, on its face, contemplates effects other than difficulty hearing or understanding speech. 
The discussion above, reflects that the symptoms of the Veteran’s bilateral hearing are contemplated by the applicable rating criteria. The effects of his disability, including difficulty following conversations and responding accurately, difficulty hearing soft spoken women, and difficulty hearing in the presence of background noise have been fully considered and are contemplated in the rating schedule. Thus, the first prong has not been satisfied. Given such consideration of whether his disability picture exhibits other related factors such as those provided by the regulations as “governing norms” is not required and referral for an extraschedular rating is denied. Thun v. Peake, 22 Vet. App. 111 (2008).
5. Entitlement to an initial compensable rating for peripheral vestibular disorder from January 24, 2017 to April 30, 2018
The Veteran contends that he should be assigned a higher rating for his peripheral vestibular disorder. Specifically, the Veteran contends that he should be rated pursuant to 38 C.F.R. § 4.87, Diagnostic Code 6205 Meniere’s syndrome which would warrant a 100 percent rating. See Veteran’s Legal Brief, received in May 2017. 
The AOJ found that the Veteran’s peripheral vestibular disorder was not supported by objective findings and assigned a noncompensable (zero percent) rating pursuant to 38 C.F.R. § 4.87, Diagnostic Code 6204 for peripheral vestibular disorders.
Diagnostic Code 6204 provides for a 10 percent rating for occasional dizziness and the maximum schedular rating of 30 percent for dizziness and occasional staggering. A Note following Diagnostic Code 6204 provides: “Objective findings supporting the diagnosis of vestibular disequilibrium are required before a compensable rating can be assigned under this code.” 38 C.F.R. § 4.87, Diagnostic Code 6204. 
The term “staggering” is not defined in the rating schedule, but is generally defined as standing or proceeding unsteadily. See Webster’s New College Dictionary, 3rd ed., at 1099.
The Board first finds that the objective findings support a diagnosis of vestibular disequilibrium. 
A March 2017 Audiology consultation record indicates that a videonystagmography (VNG) bithermal caloric test suggested a significant (35%) right unilateral vestibular weakness. See Dallas VAMC records, received April 2017 in CAPRI/VBMS. The Veteran underwent VA examination in April 2017 at which time the examiner noted that that the VNG study done at the Dallas VAMC in March 2017 confirmed a significantly reduced bithermal caloric response on the right side which indicated that the Veteran had a diagnosis of a right peripheral vestibular disorder/injury. The examiner noted that the Veteran’s history and current findings, specifically the ENG (VNG) results would be compatible with a labyrinthine injury that had resulted in the constant sensation of dysequilibrium. The examiner also noted that he found no clinical evidence of Meniere’s, there was no evidence that the Veteran’s cochlear function had been affected, and the otoscopic examination was unremarkable. See April 2017, Central Nervous System and Neuromuscular Diseases DBQ.
The Board next finds that a higher initial rating of 30 percent for the vestibular disorder is warranted. 
As noted above, at a March 2017 audiology consultation, the Veteran described symptoms of loss of balance, slight spinning, and inability to walk straight with episodes occurring daily and lasting a few seconds. See Dallas VAMC records, received April 2017 in CAPRI/VBMS. At the April 2017 VA examination, the Veteran reported constant sensation of disequilibrium especially when he closes his eyes. See April 2017, Central Nervous System and Neuromuscular Diseases DBQ.
The Veteran is competent to report symptoms such as dizziness, staggering, and loss of balance, because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007). 
Given his credible complaints of dizziness, loss of balance, and inability to walk straight combined with the March 2017 ENG which show objective findings of a vestibular disorder during the appeal period, the Board finds that an initial disability rating of 30 percent under Diagnostic Code 6204 is warranted. 
Resolving reasonable doubt in the Veteran’s favor, the Board finds that the symptomatology for the vestibular disorder closely approximates that for dizziness and occasional staggering, warranting a 30 percent disability rating for the entire initial rating period on appeal. 38 C.F.R. § 4.124a. A 30 percent disability rating represents the maximum schedular rating available under the schedular criteria of Diagnostic Code 6204. Additionally, the Board finds no other applicable diagnostic codes that would afford the Veteran a higher disability rating. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 
The Board acknowledges the Veteran’s argument that a diagnosis of Meniere’s syndrome given at the April 13, 2017, VA examination was ignored which would warrant a 100 percent rating. As noted above, however, the April 2017 VA examiner noted that he found no clinical evidence of Meniere’s. 
Accordingly, the preponderance of the evidence is in favor of assigning a 30 percent, but no higher, rating for the Veteran’s peripheral vestibular disorder during the appeal period; and the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107.
Service Connection
Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).
Service connection may also be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury pursuant to 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires two elements: (1) a current disability and (2) a causal relationship or nexus between the current disability and a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).
6. Entitlement to service connection for an embolism
The Veteran contends that he has an embolism secondary to his service-connected tinnitus.
The Board concludes that the Veteran does not have a diagnosis of an embolism and has not had one at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).
Post-service medical records are absent a diagnosis of an embolism. VA treatment records from March 2016 to January 2018 show no diagnosis of an embolism; and except for a March 2017 audiology consultation record at which time the Veteran reported loss of balance, slight spinning, and inability to walk straight with episodes occurring daily and lasting a few seconds, these records show no neurological deficits. See Dallas VA Medical Center (VAMC) records, received April 2017 in Compensation and Pension Record Interchange (CAPRI)/Veterans Benefit Management System (VBMS); see also Oklahoma City VAMC records, received April 2017, and April 2018 in Compensation and Pension Record Interchange (CAPRI)/Veterans Benefit Management System (VBMS). 
The Veteran underwent VA examination in April 2017 at which time the VA examiner determined that he did not have a current diagnosis of an embolism. The examiner noted that the current neurologic examination did not reveal any localizing deficits to suggest a central nervous system condition. See April 2017 Central Nervous System and Neuromuscular Diseases Disability Benefits Questionnaire (DBQ).
Thus, there is no diagnosis of a current embolism. To the extent that the Veteran believes that he has a current embolism, as a lay person, the Veteran is competent to report observable symptoms. See Washington v. Nicholson, 21 Vet. App. 191, 195 (2007) (holding that, “[a]s a layperson, an appellant is competent to provide information regarding visible, or otherwise observable symptoms of disability”); see also Barr v. Nicholson, 21 Vet. App. 303 (2007) (Lay testimony is competent to establish the presence of observable symptomatology); Layno v. Brown, 6 Vet. App. 465 (1994). Lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The Veteran, however, is not competent to provide a diagnosis in this case. This issue is medically complex, as it requires specialized medical knowledge. Jandreau, 492 F.3d at 1377 n.4. Consequently, the Board gives more probative weight to the medical evidence in this case.
In the absence of competent evidence that a current chronic embolism disability exists which was caused by or aggravated by the Veteran’s military service, the criteria for establishing service connection for an embolism have not been established. 38 C.F.R. § 3.303; Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

(Continued on the next page)
 
Accordingly, the Board concludes that the preponderance of the evidence is against the claim for service connection for an embolism, and the benefit-of-the-doubt rule enunciated in 38 U.S.C. § 5107(b) is not for application.
 
YVETTE R. WHITE
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD P. Olson, Counsel